**In re Anonymous No. 128 D.B. 91**

Disciplinary Board no. 128 D.B. 91.

WATSON CARSON, *Member*, June 20, 1994—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

On October 7, 1991, Office of Disciplinary Counsel filed a petition for discipline against [respondent] which charged him with professional misconduct involving neglect, failure to keep a client informed, failure to surrender papers and unearned, advanced fees upon termination of representation.

Respondent did not file an answer within the prescribed period.

On November 25, 1991, the matter was referred to Hearing Committee [ ], chaired by [ ], Esquire, and included members [ ], Esquire, and [ ], Esquire. A pre-hearing conference was held on January 13, 1992. A second pre-hearing conference was held on February 12, 1992, at which the respondent was not present. A hearing was held on May 28, 1992.

On October 18, 1993, the Hearing Committee filed its report, and the majority recommended that respondent receive a public censure with probation. The dissenting member urged that the respondent be suspended for a period of one year and one day.

On November 9, 1993, petitioner filed a brief on exceptions, which argued that respondent receive suspension

of one year and one day. Respondent did not file exceptions.

The matter was adjudicated at the February 3, 1994 meeting of the Disciplinary Board of the Supreme Court of Pennsylvania.

## II. FINDINGS OF FACT

(1) Petitioner, whose principal office is now located at Suite 400, Union Trust Building, 501 Grant Street, Pittsburgh, Pennsylvania, is invested, pursuant to Rule 207, Pa.R.D.E. with the power to investigate all matters involving alleged misconduct of an attorney admitted to practice law in Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the aforesaid rules.

(2) Respondent was born in 1942 and was admitted to practice law in the Commonwealth of Pennsylvania in 1968. (Stip. 1.)

(3) Respondent has an office for the practice of law at [ ]. (Stip. 2.)

(4) In March 1988, [A] requested respondent to represent her with regard to a debt asserted by the Internal Revenue Service relating to payroll taxes from a bankrupt company of which she and a former husband were principal officers. (N.T. pp. 20-25, 31-32.)

(5) Respondent agreed to the representation, and sent complainant a letter of confirmation, detailing his fee and requesting a retainer of $500 on March 29, 1988. (Stip. 4, 7, 8, Ex. P-3.)

(6) Complainant forwarded a $500 check to respondent, which he negotiated. (Stip. 9, 10.)

(7) Respondent became aware that the representation involved not only a tax issue, but also involved a per-

sonal bankruptcy, a business bankruptcy, and a divorce proceeding. (N.T. pp. 28, 47-48, 29.)

(8) With regard to the representation, respondent took the following actions:

(a) Respondent requested personal bankruptcy schedules from [B], Esquire on March 22, 1988. (Ex. P-1.)

(b) Respondent contacted [C], revenue officer with the Internal Revenue Service by telephone and by letter dated April 12, 1988. (N.T. pp. 49-50, Ex. P-5.)

(c) Respondent advised complainant of several possible strategies she could adopt to deal with the Internal Revenue Service demands, including doing nothing, attempting to litigate the assessment, or paying some of the tax and litigating the Internal Revenue Service claim collaterally. (N.T. p. 50.)

(d) Respondent cooperated with complainant's divorce attorney, providing advice on the tax aspects of the decree. His advice resulted in a determination by the master that complainant was only responsible for one-third of the assessed tax. (N.T. pp. 29, 51.)

(e) Respondent advised complainant not to complete IRS Form 433-A because such action would be detrimental to her interests. (N.T. pp. 58-59.)

(9) Respondent did not communicate with complainant from April 12, 1988 through December 30, 1988. (Stip. 16.)

(10) Respondent failed to respond to requests from complainant for information concerning her case on the following occasions:

(a) Complainant sent respondent a letter dated December 30, 1988, enclosing her 1987 income tax return and asking the status of her case. (Stip. 17, 18.)

(b) Complainant forwarded to respondent, on or about July 28, 1989, a notice to her from the Internal Revenue

Service demanding full payment of the payroll tax obligation. (Stip. 19, 20, 21.)

(c) Complainant requested respondent to give her information about the representation by sending him a letter dated August 7, 1989. This letter also contained copies of notices from the Internal Revenue Service to her. (Stip. 23, 24.)

(d) After receiving a final notice of intention to levy from the Internal Revenue Service, complainant forwarded this to respondent on or about March 19, 1990. (Stip. 25, 26.)

(e) Complainant sent by certified letter dated April 6, 1990 a request that respondent forward her complete file to her. (Stip. 28.)

(11) By letter dated May 1, 1990, complainant terminated the representation and requested that her file, with all documents, be sent to her. Respondent did not comply. (N.T. pp. 54-55, Stip. 30, 34.)

(12) By the same letter dated May 1, 1990, complainant requested that respondent provide an accounting for his services and refund any portion of the retainer which had not been earned. (Stip. 31, 35.)

(13) On December 14, 1978, respondent received an informal admonition for violations of D.R. 6-101 (A)(3); D.R. 1-102(A)(4), (5) and (6); and D.R. 7-102 (A)(1), (2) and (3). (Ex. P-G.)

(14) On March 29, 1979, respondent received a private reprimand for a violation of D.R. 6-101(A)(3). (Ex. P-H.)

(15) On September 7, 1980, respondent was suspended from the practice of law for six months by order of the Supreme Court for misrepresentations made at the time of the private reprimand above. (Ex. P-J.)

(16) On March 2, 1987, respondent received an informal admonition for violations of D.R. 1-102(A)(5) and (6); and D.R. 7-101(A)(1), (2), and (3). Part of the misconduct proven was a failure to forward a client's file to their new attorney following termination of respondent's representation. (Ex. P-K.)

(17) On June 20, 1991, respondent received an informal admonition for violations of Pa.R.P.C. 1.2(a), 1.4(a), and 1.4(b). Part of the misconduct found was a failure to respond to client's requests for information regarding the status of the matter. (Ex. P-L.)

## III. CONCLUSIONS OF LAW

The board agrees with the Hearing Committee that respondent did not violate Pa.R.P.C. 1.3 in his representation of complainant because he acted with reasonable diligence in representing her.

Respondent did violate Pa.R.P.C. 1.4(a) because he did not respond to complainant's requests for information about the representation, thus failing to keep her informed about the status of the matter, and failing to comply with reasonable requests for information.

Respondent did violate Pa.R.P.C. 1.16(d) by not forwarding complainant's file to her as requested upon receipt of her letter terminating the representation. Respondent also violated Rule 1.16(d) by failing to provide an accounting for services respondent rendered in the representation, and by failing to refund any unearned portion of the $500 retainer.

## IV. DISCUSSION

The first issue before the board is whether respondent's conduct violated the Rules of Professional Conduct as charged. "The evidence is sufficient to prove ethical mis-

conduct if a preponderance of that evidence established the charged violation and the proof is clear and satisfactory." *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 580, 506 A.2d 872, 875 (1986). We find that the evidence clearly and satisfactorily proves an ethical violation of two of the three rules cited in the petition of discipline.

The complaint in this matter grows out of the representation of one client, [A], who contacted respondent on the advice of her divorce attorney. (N.T. p. 22.) The representation concerned payroll taxes that the Internal Revenue Service asserted complainant owed, jointly and severally, with, among others, her former husband, because of her position as an officer of a failed corporation started during the course of the marriage. (N.T. pp. 20-25, 31-32.)

We find that respondent did not violate Rule 1.3, Pa.R.P.C. "[a] lawyer shall act with reasonable diligence and promptness in representing a client." The evidence presented at the hearing by exhibit and testimony shows that respondent, when contacted by complainant, immediately assessed her legal position and contacted the revenue officer handling her case to enter an appearance. (N.T. pp. 49-50, Ex. P-5.) He also requested the appropriate files from the attorney handling her personal bankruptcy. (Ex. P-1.) Respondent did make clear to complainant her options in the matter, giving her three possible courses of action and suggesting one as the most appropriate for her situation. (N.T. p. 50.)

Even more importantly, the evidence shows that respondent rendered advice to complainant's divorce attorney that resulted in a decree giving her rights against her former husband for two-thirds of the payroll taxes

the Internal Revenue Service could collect from her. (N.T. pp. 29, 51.) Therefore, the evidence does not clearly and satisfactorily show that respondent did not use reasonable diligence and promptness in the representation, so that no violation of Rule 1.3 is established.

The evidence does prove clearly and satisfactorily a violation of Rule 1.4(a), Pa.R.P.C., which says, "[a] lawyer shall keep a client informed about the status of a matter and promptly comply with reasonable requests for information." The record shows that respondent did not contact complainant at all for a period of seven months following the beginning of the representation and the receipt of the retainer. (Stip. 16.) The record also shows that respondent never responded in writing at any time during the representation, despite repeated requests by complainant that he do so. (Finding of fact 10 (a-e).) These requests for information, moreover, were not merely the communications of an over- anxious client, instead, the written requests were prompted by notices from the Internal Revenue Service. (Exs. P-8, P-9, P-10, P-12.) Such notices suggest that the agency is moving against the client, and the client may reasonably feel that some action by the attorney is necessary. This is especially true of the "Final Notice (Notice of Intention to Levy)," which states, "[t]his is your notice that after 30 days from the date of this letter, *We Will Begin Enforced Collection Action.*" (Ex.P-12.) (emphasis in original) A reasonable client could see this as an escalation of Internal Revenue Service action against him or her, and desire advice and information on how to proceed.

The testimony of the parties did establish that respondent spoke to complainant about the representation on

the telephone on at least one occasion. (N.T. p. 44.) However, the stipulation of fact, entered into by petitioner and respondent after corrections by respondent, as well as testimony at the hearing, show that at no time did respondent ever respond in writing, and that most of complainant's telephone calls were never responded to at all. (N.T. p. 52, Stip. 16-33, 37.)

Therefore, the board finds ample evidence that respondent violated Rule 1.4(a), Pa.R.P.C., in that he failed to keep his client informed of the status of the matter, and failed to promptly comply with reasonable requests for information.

The third issue relates to the termination of the representation. Rule 1.16(d), Pa.R.P.C., provides, in part, "[u]pon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as ... surrendering papers and property to which the client is entitled and refunding any advance payment of fee which has not been earned."

By letter dated May 1, 1990, complainant terminated respondent's representation. (Stip. 30.) This letter contained a request for a copy of her file. *Id.* Respondent admitted by testimony and stipulation that he did not return her file as requested. (N.T. p. 54, Stip. 34.) He further admitted that he had "no good explanation as to why we didn't get it to her within 10 days." (N.T. p. 52.) Further, in the same letter terminating the representation, complainant requested that he give an accounting of his services and return any portion of the retainer which had not been earned. This the respondent admits by stipulation he did not do. (Stip. 35.) Therefore, by clear and satisfactory evidence in the record, the board

finds that respondent violated the literal language of Rule 1.16(d), Pa.R.P.C.

The next issue before the board is the recommendation of the appropriate discipline for the violations shown. One of the factors which the board may consider in making its recommendation is the respondent's history of prior discipline. Pa. Disciplinary Board Rules and Procedures §89.151(b)(9). As the respondent has a history starting in 1978, it is appropriate to discuss why all of these incidents should be considered. The general rule regarding the receipt of such evidence is governed by the above-cited subsection, 89.151(b)(9) of the Disciplinary Board's rules and procedures. This subsection provides that: "A statement of every disciplinary proceeding or procedure of inquiry concerning the standing of the respondent-attorney as a member of any profession or organization, or holder of any license or office, which involved the censure, removal, suspension, revocation of license or discipline of the respondent-attorney; and as to each, the dates, facts and disposition thereof, except that no evidence shall be received of proceedings and dispositions under these rules where the official records thereof are under [section] 93.102(b) (2) of this Title (relating to the availability of records of investigations and informal proceedings) not available for use against the respondent-attorney." Therefore the consideration of prior discipline is governed by section 93.102(b)(2). This section states: "The fact that a complaint has been filed or that an informal admonition or private reprimand has been administered shall not be deemed relevant for the purposes of this subsection if: ... (ii) the informal admonition or private reprimand was administered more than six years before the request

for access is made, *if no other grievances or complaints resulting in the imposition of discipline were filed against the respondent-attorney during such six-year period.*" (emphasis added)

Therefore, in the matter before the board, all of the prior impositions of discipline may be considered. The six-month suspension may be considered because it is public. The two informal admonitions dated March 2, 1987 and June 20, 1991 may be considered because they were administered within six years of the filing of the current complaint. The informal admonition dated December 14, 1978 and the private reprimand dated March 29, 1979 may be considered because the six-month suspension occurred prior to the running of the full six-year period, which would otherwise have barred consideration of these two private impositions of discipline.

One other possible factor must be discussed. The board may *not* use as part of its considerations for discipline the failure of the respondent to file an answer to the petition for discipline. Rule 208(b)(3) states, "[w]ithin 20 days after such service [of the petition for discipline upon the respondent-attorney], the respondent-attorney shall serve an answer upon Disciplinary Counsel and file the original thereof with the board. In the event the respondent-attorney fails to file an answer, the charges shall be deemed at issue." Rule 208(b)(3), Pa.R.D.E. Therefore, the respondent-attorney may not be prejudiced by the failure to file, deliberate or not. Consideration of the failure to file would undercut the spirit of the rule by providing a trap for the unwary. (Likewise, the action of the member of the Hearing Committee supervising the pre-hearing conference in issuing an order requiring the respondent to file an answer (Ex. P-C) is procedurally incorrect.)

Nor may it consider the failure of the respondent to file a statement of position upon the receipt of a D.B.-7 (notice of investigation) letter. Under Rule 207(b)(2), Pa.R.D.E., "... no disposition shall be recommended or undertaken by Disciplinary Counsel until the accused attorney shall have been afforded the opportunity to state a position with respect to the allegations against the attorney." This regulation gives the "opportunity" to the attorney, not an obligation to respond.

However, after considering all proper factors, the board finds that something more than public censure is warranted. In addition to the conduct found here, the prior discipline record shows a pattern of lack of regard for keeping clients informed, and a prior failure to forward a client's file upon termination of a representation when requested to do so by the client.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that respondent, [　], receive a six-month suspension from the practice of law.

It is further recommended that the court direct that respondent pay all of the necessary expenses incurred in the investigation and processing of this matter pursuant to Rule 208(g), Pa.R.D.E.

Board Members Robert J. Kerns and Stephen T. Saltz dissent and would recommend a lesser suspension.

Board Member Gerald C. Paris dissents and would recommend a greater suspension.

Board Member Leonard A. Sloane did not participate in the adjudication.

## ORDER

And now, August 23, 1994, upon consideration of the report and recommendations of the Disciplinary Board dated June 20, 1994, it is hereby ordered that [respondent], be and he is suspended from the bar of this Commonwealth for a period of six months, and he shall comply with all the provisions of Rule 217, Pa.R.D.E.

It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Mr. Justice Frank J. Montemuro is sitting by designation as Senior Justice pursuant to Judicial Assignment Docket no. 94 R1801, due to the unavailability of Mr. Justice Rolf Larsen, see no. 127 Judicial Administration Docket no. 1, filed October 28, 1993.